## Toub, to use, v. Tessler et al.

*Levick, Wexler & Weisman,* for plaintiff.
*A. Allan Goodman,* for defendant.

GORDON, JR., J., December 17, 1932.—This is a citation for the possession of real estate under the Act of April 20, 1905, P. L. 239. The real estate in question was sold by the sheriff on September 19, 1932, under a writ of fi. fa. issued upon a judgment entered on a bond accompanying a mortgage, and, according to the uncontradicted averments of the answer, which must be taken to be true,

the property was bought in by Esther Greenberg, assignee of the mortgage, the sheriff's deed being made to her designated straw party, Anna Robinson, the petitioner. We will, therefore, consider the case as if Esther Greenberg were the real petitioner here. The respondent, I. Ross, is the tenant in possession of the property, and bases his resistance to the demand for possession upon the ground that his right to possession is paramount to hers.

From the pleadings, the following relevant and controlling facts appear. The property was mortgaged, on April 12, 1922, to Michael Toub, the legal plaintiff, by the then owner, Harry Tessler, for $6500. Thereafter the legal title to the property, by mesne conveyances, and the ownership of the mortgage, by successive assignments, passed to various persons, until April 13, 1931, at which date Yetta Segal was the owner of the land and the petitioner the holder of the mortgage. On this date the respondent, I. Ross, leased the property from Yetta Segal for a period of five years at a monthly rental of $65. On July 3, 1932, default was made by Yetta Segal in the payment of the principal and interest then due on the mortgage. Thereupon the petitioner made demand upon the respondent tenant for the payment to her of the rents as they became due thereafter. Subsequently, the petitioner sued the respondent in the Municipal Court for the rent which had accrued to the date of the suit. In this suit the petitioner based her demand for the rents upon her status as assignee of the mortgage, referred to above, which was created in 1922 and contained a conveyance of the reversions and rents of the property. This suit was ultimately ended by the respondent paying to the petitioner a sum representing rent from July 3, 1932, the date of the default, to September 19, 1932, the date of the sheriff's sale. Thereafter the citation for possession now before us issued, when the respondent tenant refused to vacate the premises on the demand of the petitioner who had purchased the property at the sale.

From the foregoing facts, the respondent contends that his right to possession is paramount to that of the petitioner, mortgagee purchaser at the sheriff's sale, notwithstanding that his lease from Yetta Segal, the owner, is subsequent in point of time to the mortgage under which the sale was had, because the mortgagee's demand and acceptance of rent during the interval between the default and the sheriff's sale worked an attornment, which estops the mortgagee from repudiating the lease and the tenant's right to possession under it for the balance of its term. The respondent contends that, under the case of Randal v. Jersey Mortgage Investment Co. et al., 306 Pa. 1, payment of rent by a tenant to a mortgagee after default under the mortgage constitutes an attornment in law; and from this premise he argues that a mortgagee, who becomes owner of the property through a foreclosure sale after such an attornment, is estopped from evicting the tenant who has attorned to him.

We do not so read the decision of the Supreme Court in that case; neither do we follow to the conclusion the respondent urges upon us. The case is clearly distinguishable upon its facts from the one before us, and, in addition, we do not understand the Supreme Court to have held that such a payment to the mortgagee constitutes a true attornment in law, even under the Statute of 4 Anne, c. 16, Sec. 9. That case was a proceeding in equity, amounting to cross bills, between a mortgagor and mortgagee, in which their respective rights to rent, under a lease executed subsequent to the creation of the mortgage, was the principal and controlling issue. The Supreme Court there held that, as between a mortgagor and mortgagee whose mortgage contains, in addition to the conveyance of the legal title, a conveyance or assignment of future rents as security for the mortgage debt, the mortgagee is entitled to the rents, whether they accrue before or after the date of default, since the rights of the mortga-

gor and those claiming under him are necessarily subject to the prior rights of the mortgagee. In delivering the opinion of the court, Mr. Justice Simpson did say that such a payment is "the equivalent of an attornment, and the mortgagor and those claiming title under him, cannot justly complain of such payments," but we think this expression of the learned justice who wrote that opinion, when read in connection with the facts of the case, falls far short of holding that payment of rent to the mortgagee after default constitutes an attornment in law as between him and the tenant, when the right to collect rent already exists by virtue of the terms of the mortgage. One thing which is equivalent to another may not be in all respects identical, and we take it that the very use of this word implies a careful purpose to decide that such a payment is only the equivalent of an attornment rather than that it is an attornment.

It is well settled that an attornment does not create a new lease: it operates merely to substitute a new landlord under the old lease. "An attornment is a continuation of an existing lease, simply putting another in the place of the lessor; and after attornment the tenant holds on the same conditions as under his former landlord:" 35 C. J. 967, Sec. 40. Before the Statute of Anne, attornments had to be in writing, in which, of course, the intention of the new owner to become the landlord of the tenant, and of the tenant to recognize the new owner as such, would be evident. All that the Statute of Anne accomplished was to do away with the necessity for a writing, and to work an attornment by the mere payment of rent in circumstances where, before the statute, both a writing and payment of rent were necessary. The statute made the act of paying rent alone a sufficient indication of an intention to attorn to bring about that result. " 'Attornment' is the act of recognizing a new landlord. The word comes from a feudal law, where it signifies the transfer by act of the lord with the consent of the tenant of all service, and homage of the tenant to some new lord who had acquired the estate:" 1 Words and Phrases Judicially Defined, 637. "Attornment is an acknowledgment or agreement by the tenant that the freehold is in another, or that such person is his landlord:" Ibid. In the exhaustive and illuminating opinion by Judge Keller of the Superior Court, in the case of Bulger v. Wilderman and Pleet, 101 Pa. Superior Ct. 168, to which reference is made for a thorough and comprehensive discussion of the whole subject, it is clearly pointed out that a mortgagee who collects rents by virtue of the conveyance of them to him in the mortgage, does so not as landlord, but as assignee of the rents as security for the mortgage debt. "The mortgagee, or his assignee, could enter and collect the rents and hold them, until through them, or otherwise, the debt was paid. The right was conditional and would cease on payment of the debt, but until paid, the right of possession was as real and substantial as if absolute." As between the parties to the mortgage, the mortgagee is the owner of the land, but as to third persons he holds title merely as security for the debt. Hence, his right to collect rents is limited and bounded by the extent of his equity in the property for which the mortgage is security. This being so, can it be doubted that a tenant, who pays rent to a mortgagee under such circumstances, could refuse to continue paying to him after a sufficient number of payments had been made to discharge the mortgage debt? And if he could, then no true attornment is worked by such a payment, since it is made not to the landlord-owner of the land, but to the assignee of the rent in security for the mortgage debt. See 35 C. J. 1248, Sec. 607, and cases cited thereunder.

Whenever, therefore, a person collecting rents from a tenant is entitled to receive them in one or the other of two capacities, namely, that of owner-landlord on the one hand or that of the mortgagee-assignee on the other, the

mere payment of the rent, without other circumstances, can support no inference that it was given and received in the one capacity rather than in the other. In such a situation, the burden of showing the facts and circumstances which would support the inference that the payment was made to the mortgagee in the new capacity of landlord must necessarily rest upon the tenant who asserts it; and nothing in the case before us justifies such a conclusion. Indeed, the fact that, in her suit for the rent, the mortgagee did not ground her claim upon the lease, but under averments of her status as mortgagee and her right to the rent under the assignment contained in the mortgage, together with the fact that the rent was ultimately paid in response to that suit, indicates that it was so paid and received, not in recognition of a new landlord but in acknowledgment of the mortgagee's right to collect it under the terms of the mortgage.

For these reasons, we are of opinion that the mere payment of rent by a tenant to a mortgagee after default and before foreclosure sale does not work an attornment. Circumstances might arise in which an attornment might be brought about in effect under the doctrine of estoppel, as where, on demand of the mortgagee, the tenant is induced to do something which he is not bound to do under the lease or to act or refrain from acting in some manner to his detriment. In such a case, however, all the elements of an estoppel must be present; and merely to pay rent which the tenant is already required to pay by virtue of the lease and his possession under it cannot support an estoppel. It is a matter of indifference to a tenant whether he pays rent to the mortgagor or to the mortgagee, so long as the payment discharges his obligation with respect to the rent. On any theory of estoppel, therefore, we think this tenant's contention cannot be sustained.

If it be conceded for the sake of argument, however, that the payment of rent under the circumstances of this case did bring about an attornment between the tenant and the mortgagee, we still do not think that the tenant is entitled to retain possession of the property. As already stated, an attornment does not give rise to a new lease; it simply substitutes another person as landlord in the lease already existing. An attornment cannot enlarge the rights of a tenant under a lease. It remains the same lease, and the tenancy the same tenancy, as before the attornment. So, also, all the duties and liabilities to which the lease gives rise continue the same after an attornment. Hence the liability of a lease to be terminated and the tenant's right to possession lost by a sale under a prior mortgage remain, notwithstanding an attornment, and continue so in the hands of the mortgagee as landlord under it. To hold otherwise would tend to produce inequality among bidders at the sheriff's sale, which the law is careful to guard against, and would subject the mortgagee to an inequitable burden in protecting himself at the sale. He might be seriously handicapped in bidding to protect his mortgage if he alone would be compelled, after purchasing the property, to take it subject to a long-term lease the provisions of which might be ruinous. Such a situation might completely destroy the value of a mortgage; it would certainly jeopardize one of the securities for the debt given by the mortgage and would produce a manifest inequality among bidders at the sale. Therefore, it seems clear to us that, whether or not the payment of rent by this tenant to the mortgagee constituted an attornment in law, the lease was discharged by the sale under the mortgage and the tenant's right to possession lost.

We do not think it necessary to discuss the effect of the provisions of section fourteen of the Act of April 20, 1905, P. L. 239, which purports to prescribe the circumstances under which the right of possession of a tenant for years shall be deemed paramount to that of a purchaser at a judicial sale. It is doubtful

whether this section has any applicability to the case before us; but, even if it has, it cannot alter the result in this case. We refer to it merely because that section has been called to our attention by the parties.

For the foregoing reasons, the prayer of the petition before us is granted and judgment is entered in favor of the petitioner. Let writ of possession issue.